UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:96-cr-00080-SEB-DKL-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| Willie Newman | (COMPASSIONATE RELEASE) |

Upon motion of ■ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

■ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

■ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:96-cr-00080-SEB-DKL-01 |
| | ) | |
| WILLIE NEWMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Willie Newman's emergency motion for compassionate release, dkt. [6], filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Mr. Newman asks the Court to reduce his sentence of imprisonment to time served. For the reasons explained below, Mr. Newman's motion is **DENIED**.

## I.
### BACKGROUND

A jury convicted Mr. Newman in May 1997 of armed bank robbery. Dkt. 21 at 2; dkt. 21-1 at 1. Mr. Newman was sentenced to a mandatory life sentence after the trial court found that it was his third violent felony conviction. Dkt. 21-1 at 14; 18 U.S.C. § 3559(c)(1). His prior convictions include an armed robbery at the age of 24 and another bank robbery at the age of 34. *Id.* at 7-8.

During the commission of the bank robbery for which he is currently incarcerated, Mr. Newman threatened a bank employee with a weapon and used her as a physical shield as he exited the bank. *Id.* at 3. Mr. Newman was arrested on April 19, 1996, and he has been in custody since then. Dkt. 18 at 2. He is now 76 years old and incarcerated at FCI Greenville in Illinois. *Id.*

2

at 2, 16. While incarcerated, Mr. Newman has successfully completed numerous courses. His conduct record is clear, and he currently works as a housing unit orderly. Dkt. 18 at 21.

Mr. Newman's motion is motivated in part by the COVID-19 pandemic. FCI Greenville has seen over 110 cases among inmates and over 20 cases among staff members. U.S. Bureau of Prisons, *COVID-19 Update*, avail. at https://www.bop.gov/coronavirus/ (last visited Oct. 15, 2020). As of October 15, 2020, FCI Greenville had twenty-nine active cases between inmates and staff (23 inmates and 6 staff members). *Id.* Mr. Newman suffers from hypertension. Dkt. 18 at 16. The Centers for Disease Control and Prevention (CDC) report that people with hypertension "might be at an increased risk" for serious illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 15, 2020). Additionally, on June 9, 2020, Mr. Newman's Hemoglobin A1C tested at 6.5%. A second test at that level or higher indicates that a person has type 2 diabetes. Dkt. 18 at 18. According to the CDC, people with type 2 diabetes "are at an increased risk" for serious illness from COVID-19. *Id.*

## II.
### LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), the Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." However, the Court may do so only "if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in U.S.S.G. § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

---

[1] Until December 21, 2018, only the U.S. Bureau of Prisons (BOP) could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

Subsections (A)–(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) a serious deterioration in mental or physical health because of the aging process where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).[2] Mr. Newman argues that he qualifies for compassionate release under both subsection B and subsection D.

---

[2] The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Newman's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

## III.
### ANALYSIS

Considering the factual circumstances discussed in Part I, the Court declines to reduce Mr. Newman's sentence at this time. Although Mr. Newman is over 65 and has served at least ten years, in the context of his mandatory life sentence, his medical conditions are not extraordinary or compelling reasons for his release.

First, Mr. Newman does not meet the requirements of subsection B, which requires that he be experiencing a "serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13, Application Note 1(B). While it appears that Mr. Newman suffers from several conditions that might be age-related (such as benign hypertrophy of  the prostate with urinary obstruction, hyperlipidemia, hyperglycemia, and degeneration of cervical intervertebral disc), he has not shown—or even argued—that they have resulted in a "serious" deterioration in his health. This is not a case where the defendant's age and illnesses are so advanced that "he has been incarcerated for the remainder of the years during which he had a suitable quality of life" and further imprisonment therefore "likely serves no meaningful retributive purpose." *United States v. Ennis*, No. EP 02-CR-1430-PRM-1, 2020 WL 2513109, at *8 (W.D. Tex. May 14, 2020). Although Mr. Newman is 76 years old, his activities in prison show that he is able to lead an active, meaningful life despite his health conditions. It also appears that his hypertension and other age-related illnesses are well managed.

On the particular facts of this case, the risk Mr. Newman faces from COVID-19 also does not qualify as extraordinary and compelling under the "catchall" exception in subsection D. The Court does not take Mr. Newman's medical conditions or the threat of COVID-19 lightly. According to the CDC, the risk for severe illness from COVID-19 increases with age, and 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years

6

and older, like Mr. Newman. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Oct. 16, 2020). He also has one condition—hypertension—that may increase his risk of severe illness, and he may have another condition—type 2 diabetes—that would increase his risk of serious illness, if he is infected. Mr. Newman is also African-American. The Court recognizes that the CDC has advised that some racial minority groups are being disproportionately affected by COVID-19 because of "[l]ong-standing systemic health and social inequities," although Mr. Newman does not explain whether the CDC's general guidance about race applies to incarcerated populations, which have unique characteristics. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html (last visited Oct. 15, 2020).

No matter the precautions taken at FCI Greenville, Mr. Newman's ability to control his contacts and hygiene would be greater if he was not in prison. Mr. Newman's potential risk of becoming seriously ill from COVID-19, however, is not a compelling reason for his release from a mandatory life sentence. 18 U.S.C. § 3559(c)(1) reflects Congress's judgment that Mr. Newman should spend the remainder of his life in prison—regardless of personal characteristics, rehabilitation, or other factors that would ordinarily factor into the selection of a prison sentence.[3]

Although Mr. Newman may later be diagnosed with type 2 diabetes, he does not currently have a medical condition that the CDC has identified as definitely increasing the risk of severe

---

[3] The Court notes that Congress has allowed for the possibility that a defendant serving a mandatory life sentence under § 3559(c) might obtain compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). But that provision requires that the defendant be at least 70 years of age and that he have served at least 30 years in prison. *Id.* Mr. Newman is over 70 years old, but he has not yet served 30 years in prison.  When he reaches that threshold, he may wish to seek compassionate release again.

COVID-19 symptoms. And no matter his risk factors, COVID-19 cannot deprive Mr. Newman of what he seeks through this motion—the opportunity to resume life outside prison. Mr. Newman lost that opportunity when he was convicted under § 3559(c)(1). The grim and unfortunate reality is that COVID-19 cannot deprive Mr. Newman of an opportunity he has already lost. As a result, his risk of serious illness is not a compelling basis for a sentence reduction. *See United States v. Barrios*, No. 3:02-cr-00002-RLY-CMM-05, dkt. 123 (S.D. Ind. Sept. 21, 2020) (declining to find extraordinary and compelling reasons based on risk from COVID-19 where defendant was serving mandatory life sentence).

Mr. Newman notes that some courts—including this one—have granted compassionate release to inmates serving mandatory life sentences. However, this case is different from *United States v. McGraw*, in which Chief Judge Magnus-Stinson reduced a prisoner's life sentence to time served under Application Note 1(A)—which requires a defendant to be substantially limited in providing self-care—as opposed to the catch-all provision in Application Note 1(D). *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488 (S.D. Ind. May 9, 2019). There is no indication that Mr. Newman's ability to care for himself has been substantially limited.

Because the Court finds that release is not currently justified by an extraordinary and compelling reason, the Court need not determine whether it is also warranted under the factors in 18 U.S.C. § 3553(a). The Court notes, however, that the analyses are intertwined in the case of a mandatory life sentence. A mandatory life sentence signifies an offense of the utmost seriousness. 18 U.S.C. § 3553(a)(1). A mandatory sentence means there is no disparity among defendants convicted of the same offense; reducing Mr. Newman's sentence would *create* a disparity rather than remedy one. *Id.* at § 3553(a)(6). And a mandatory life sentence indicates that only an extraordinarily lengthy prison term can reflect the seriousness of the offense and deter similar

conduct. *Id.* at §§ 3553(a)(2)(A)–(B). To be sure, the First Step Act grants the Court discretion to reassess those factors. No prison term is trivial, and Mr. Newman has served over 24 years in prison. But reducing Mr. Newman's sentence now would not serve the purposes discussed at § 3553(a).[4]

Although the Court denies this motion, it acknowledges Mr. Newman's good conduct record and efforts to improve himself and his community while in prison. These efforts are particularly commendable in light of his life sentence which inherently reduces the range of available incentives for good conduct. The bottom line is that Mr. Newman committed a serious crime which carried a mandatory lifetime prison sentence due to his prior commissions of violent felonies, and that extraordinary and compelling reasons currently do not justify a reduction in his sentence. This should not deter him from continuing to pursue a meaningful life and positively impact his peers, whether inside or outside prison.

**IV.**
**Conclusion**

Mr. Newman's motion to reduce sentence, dkt. [6], is **denied**.

**IT IS SO ORDERED.**

---

[4] The Court also notes that defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. United States Sentencing Commission, *Recidivism Among Federal Violent Offenders* 16, 27 (Jan. 2019) ("Violent offenders recidivated at a higher rate than non-violent offenders in every age group at the time of release from prison, and the gap between the two groups widens as age at release increases . . . . Robbery offenders recidivated at a higher rate, more quickly, and for more serious offenses than did the other . . . violent instant offenders."), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf. This pattern holds true even as defendants age: "The recidivism rate for robbery offenders released after age 50 is almost twice as high as the rate for all other violent instant offenders (47.0% compared to 26.9%)." *Id.* at 27. Although Mr. Newman's age is advanced, his risk of recidivism remains higher than that of other elderly offenders.

Date:  10/19/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record.